**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LAWRENCE JAMIR TAYLOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 13-CV-363-TCK-FHM |
| ) | |
| TERRY MARTIN, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate and is represented by counsel. In response to the petition, Respondent filed a motion to dismiss petition for writ of habeas corpus as time barred by the statute of limitations (Dkt. # 5), along with a supporting brief (Dkt. # 6). Petitioner filed a response (Dkt. # 9) to the motion to dismiss. Respondent filed a reply (Dkt. # 10). Petitioner filed a reply (Dkt. # 11) to Respondent's reply. For the reasons discussed below, Respondent's motion to dismiss is granted and the petition is dismissed with prejudice as time barred.

*BACKGROUND*

The record reflects that at the conclusion of a jury trial, held in Tulsa County District Court, Case No. CF-2008-2033, Petitioner Lawrence Jamir Taylor was convicted of First Degree Murder (Count 1), and Shooting With Intent to Kill (Count 2). See Dkt. # 2. In accordance with the jury's recommendation, the trial judge sentenced Petitioner to life imprisonment without the possibility of parole on Count 1 and life imprisonment on Count 2, with the sentences to be served consecutively. Id. Petitioner was represented at trial by attorney Richard Couch.

Represented by attorney Stuart Southerland, Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). In a published Opinion, filed February 16, 2011, in Case No. F-2009-486, the OCCA affirmed the Judgments and Sentences of the trial court. See Dkt. # 6-2; Taylor v. State, 248 P.3d 362 (Okla. Crim. App. 2011). The OCCA summarized the facts resulting in Petitioner's convictions,[1] as follows:

> Sometime in mid-April, 2008, Anthony Baltazar bought a stereo from the Appellant's brother, Joekele Venson. Baltazar met the Appellant for the first time at Big Joe's stereo shop, where the sound system was being installed. Baltazar later discovered that the stereo would not work. He was able to make contact with Appellant, and through him, tried to make arrangements for Joekele Venson to return the money paid for the stereo.
> The State presented evidence that Appellant and Baltazar exchanged a series of text messages and phone calls to arrange a meeting near the Ashley Park apartment complex, between Sheridan and Yale Avenues on 71st Street in Tulsa. Appellant actually lived approximately two hundred yards from the site of the meeting, in the Eagle Point Apartments. Anthony Baltazar and his brother-in-law, Joe Gomez, arrived at the meeting place between 10:00 and 10:30 p.m., on April 28, 2008.
> According to Baltazar's testimony at trial, Appellant opened the rear door of Baltazar's car and got inside. He then told Baltazar to drive to the other side of the street because it was closer to his girlfriend's apartment. As Baltazar was driving to the other side of the street, he heard a shot. Baltazar remembered falling over the center console of the car. He felt his spirit ascend from his body. He asked God for a second chance, and then regained consciousness. The car had come to a stop in the parking lot. Baltazar began honking on the horn. He had been shot in the back of the head.
> Baltazar's honking attracted the attention of a young woman in the apartments. From her second floor apartment she could see him sitting in the car, with the door open and one leg on the ground. Baltazar told her he had been shot and asked her to call 911. Baltazar's girlfriend happened to call him on the cell phone at some point. He told her he had been shot by "Joe's little brother." Tulsa Police Officer Jeff Oloman responded to the scene, finding Baltazar still sitting in his vehicle and conscious, but covered in blood. Joe Gomez was in the passenger seat, apparently dead from a gunshot wound to the head. Police recovered what proved

---

[1] A state court's findings of fact are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption with clear and convincing evidence. Id.

2

to be the murder weapon, a .38 Special caliber revolver, lying on the rear floorboard near the front passenger seat.

Police traced Appellant's residence to the nearby Eagle Point Apartments, where he lived with his grandmother. The morning after the shooting, a police detective interviewed Appellant's grandmother. She told the detective that she had seen Appellant around 10:30 p.m. the night before. He ran into her apartment, sweating, and hid in a bedroom closet. When she asked him what was wrong, he said "Nothing." He then washed his hands in the bathroom, made a phone call, and left the apartment. She heard a car door slam and a car speeding away. She had not seen him since.

Appellant's grandmother was not the only person to see him after the crimes. Appellant called one of his friends, Cheatham, for a ride on the day after the shootings. Cheatham testified he picked up Appellant at Promenade Mall. Appellant was upset and nervous. Cheatham asked him what was wrong. Appellant replied that he had "messed up." Cheatham picked up Appellant again the following day. Appellant was still agitated. He told Cheatham he believed he had killed two Mexicans over a debt owed by him and another person. Appellant stated that he had arranged to meet the men near the Ashley Park apartments, at which point he had shot the driver and passenger from the back seat. Appellant also told Cheatham he believed he had dropped his gun. Cheatham identified the pistol recovered from Baltazar's car as Appellant's. Appellant also confessed the shooting to Cheatham's mother, Ms. Basham. She testified that Appellant told her he "shot two Mexicans," over money that he owed them. Appellant asked Ms. Basham for money to buy a bus ticket, but she offered only to help him turn himself in to police. Cheatham and Appellant then left her house.

Appellant also contacted another friend after the shootings, Ms. Vanco. She testified that Appellant texted her, said he needed to talk, and asked if he could come over to her house. When she asked why, he refused to tell her. He then asked if she had watched the news. She asked Appellant if he was talking about a murder at Observation Point. Appellant told her it was not that murder. Vanco then asked if it was the murder where one Mexican had been killed and another shot. Appellant said, "Yes." Appellant and Cheatham visited Vanco's house on May 1, 2008, three days after the shootings. Appellant brought a bag into the house. He stated to Vanco that someone had set him up, leaving his gun at the crime scene. He also stated that the victims had been looking for him over a problem with his brother. Appellant said he was leaving for Cleveland, Ohio, to live with his aunt. Police arrested Appellant at Vanco's apartment.

Police recovered Appellant's bag from Vanco's apartment. Inside they found a cell phone bill in Appellant's name and a spent .38 caliber cartridge. Ballistics analysis of this shell casing matched it to the pistol recovered in Baltazar's car. A search of the apartment where Appellant lived with his grandmother recovered a box of Independence brand .38 Special caliber ammunition in the same closet where Appellant had hidden the night of the shooting. These cartridges were the same brand and shared the same markings as the cartridges recovered from the pistol in

> Baltazar's car and the spent casing found in Appellant's bag. Investigators also recovered Appellant's fingerprints from the exterior of the left rear door of Baltazar's vehicle, the interior driver's door handle and the left rear passenger door handle. Investigators found a blood transfer stain in the rear seat, probably the result of the shooter's contact with the victims as he reached into the front of the vehicle to put the transmission in park or unlock the rear doors.
>
> The medical examiner testified that Joe Gomez died from a single gunshot wound to the head. The projectile recovered from Mr. Gomez was .38 caliber in size, and traveled through the brain from left to right, slightly downward, stopping in his right cheek. The bullet severed the brain stem and caused instant death. The bullet recovered from Mr. Baltazar's head was a .22 caliber bullet.
>
> The defense called witnesses who testified to inconsistent statements by Mr. Baltazar concerning the identification of the shooter. He told a nurse at St. Francis Hospital that he was shot by a stranger. He told a detective that he did not know who shot him, only that the shooter was a black male. A physician's assistant testified that Baltazar was unable, or possibly unwilling, to identify the shooter. Appellant did not testify.

Taylor, 248 P.3d at 366-68; Dkt. # 6-2 at 1-6. In affirming Petitioner's Judgment and Sentence on direct appeal, the OCCA adjudicated the following claims: (1) insufficient evidence supported the conviction for Shooting With Intent to Kill, (2) the district court erred by failing to give an instruction that each count should be considered separately, (3) extrajudicial statements by Petitioner's grandmother were admitted in violation of the rule against hearsay and Petitioner's right to confront his accusers, (4) photographs of the shooting victims were improperly admitted, (5) the prosecutor engaged in improper conduct, and (6) cumulative error. See Dkt. # 6-2. The OCCA found the trial court erred in admitting the statements of Petitioner's grandmother, but that the error was harmless. Id. at 10-24. In addition, the OCCA found that the prosecutor made erroneous statements about the 85% Rule, but that the statements had no substantial influence on the outcome of the trial and were, therefore, harmless. Id. at 29-33. After the OCCA affirmed his Judgment and Sentence on direct appeal, Petitioner did not seek certiorari review in the United States Supreme Court.

On September 16, 2011, Petitioner, represented by attorney M. Michael Arnett, filed an application for post-conviction relief. See Dkt. # 6-3. He raised one proposition of error, as follows:

> The petitioner was denied due process of law by being denied a fair and impartial trial, in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America and the Constitution and laws of the State of Oklahoma.

See Dkt. # 6-3 at 2. The focus of Petitioner's post-conviction claim was that a witness for the State, Jason Cheatham, lied when he testified during Petitioner's trial that, two days after the shootings, Petitioner had confessed that he shot the two victims. Id. In support of his claim, Petitioner provided the affidavit of Cheatham, executed on July 31, 2011. By order filed December 29, 2011, the state district court denied post-conviction relief. See Dkt. # 6-4. Petitioner appealed. In his brief in chief, Petitioner raised two claims, both challenging the state district court's post-conviction rulings, as follows:

> Proposition One: The court should have given the petitioner additional time to subpoena Cheatham to testify and the court should have assisted petitioner in getting Cheatham to the hearing and is an abuse of discretion by the court and violative of the Petitioner's rights a[s] guaranteed by Article 2, Section 20 of the Oklahoma Constitution and the Sixth and Fourteenth Amendments to the Constitution of the United States of America.
>
> Proposition Two: The admission of the testimony of Rush concerning the truth and veracity of the facts stated by Cheatham to Rush in an unsworn statement should not have been considered because it is violative of the Oklahoma Rules of Evidence and is an abuse of the discretion of the court and violative of the petitioner's right of due process pursuant to Article 2, Section 7 of the Oklahoma Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

On August 3, 2012, in Case No. PC-2012-84, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 6-6.

5

On June 19, 2013, Petitioner, represented by attorneys John Thomas Hall and M. Michael Arnett, filed his federal petition for writ of habeas corpus (Dkt. # 2). In his petition, Petitioner challenges only the post-conviction rulings made by the state district court. He claims that the state district court erred in denying his application for post-conviction relief because (1) the court allowed the prosecutor "to vouch for the credibility of Mr. Cheatham's unsworn statements," and (2) the court abused its discretion "by not allowing the Petitioner additional time to locate Mr. Cheatham, and have him at the PCR hearing." See Dkt. # 2 at 10. Petitioner again relies on the affidavit of Jason Cheatham, executed on July 31, 2011. See Dkt. # 2-1. In response to the petition, Respondent filed a motion to dismiss (Dkt. # 5), arguing that the petition is time barred.

## *ANALYSIS*

### A. Any challenge to the judgment of conviction is time-barred

To the extent Petitioner's claims could be construed as a challenge to the validity of his convictions,[2] his claims are time barred. The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

---

[2]Significantly, Petitioner is represented by counsel in this case. Therefore, the Court is not obligated to construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that "the allegations of the pro se complaint [are held] to less stringent standards that formal pleadings drafted by lawyers").

6

>United States is removed, if the applicant was prevented from filing by such State actions;
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In general, the limitations period begins to run from the date on which a prisoner's conviction becomes final, but can also commence under the terms of § 2244(d)(1)(B), (C), and (D). In addition, the limitations period is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period. § 2244(d)(2).

Application of either 28 U.S.C. § 2244(d)(1)(A) or § 2244(d)(1)(D) leads to the conclusion that Petitioner filed his habeas petition after expiration of the one-year limitations period. For purposes of § 2244(d)(1)(A), Petitioner's convictions became final on May 17, 2011, after the OCCA concluded direct review on February 16, 2011, and the 90 day time period for filing a petition for writ of certiorari in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). As a result, Petitioner's one-year limitations clock began to run on May 18, 2011, see Harris v. Dinwiddie, 642 F.3d 902, 907 n.6 (10th Cir. 2011), and, absent a tolling event, a federal petition for writ of habeas corpus filed after May 18, 2012, would be untimely. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline).

Similarly, under § 2244(d)(1)(D), the "factual predicate" underlying Petitioner's habeas claims is that one of the State's witnesses, Jason Cheatham, lied at trial when he testified that

7

Petitioner told him, on April 30, 2008, that Petitioner had "killed two people." If the information contained in Cheatham's affidavit is true, making his trial testimony false, then Petitioner knew or should have known that Cheatham's trial testimony was false when he heard the testimony on May 6, 2009. The fact that Petitioner did not obtain an affidavit from Cheatham until sometime in August 2011, or more than two years later, does not reflect diligence, as required to extend the limitations deadline under § 2244(d)(1)(D). See Craft v. Jones, 435 F. App'x 789, 791 (10th Cir. 2011) (unpublished).[3] Therefore, § 2244(d)(1)(D) does not apply to trigger the running of the limitations period when Petitioner obtained Cheatham's affidavit, as argued by Petitioner. As Petitioner gains no benefit from § 2244(d)(1)(D), the one-year limitations period in this case began to run when Petitioner's conviction became final, as discussed above.

The limitations period was tolled, or suspended, during the pendency of a "properly filed" post-conviction proceeding. 28 U.S.C. § 2244(d)(2); Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). On September 16, 2011, or with 245 days remaining in the one-year limitations period, Petitioner filed his application for post-conviction relief. On August 3, 2012, the OCCA affirmed the state district court's denial of post-conviction relief. Therefore, the one-year limitations period was tolled from September 16, 2011, through August 3, 2012. Once the OCCA entered its post-conviction ruling on August 3, 2012, Petitioner had to file his habeas petition within the 245 days remaining in his one-year period, or by April 5, 2013. Petitioner filed his petition on June 19, 2013, or more than two months after expiration of the one-year limitations period. Therefore, unless

---

[3]This and other unpublished opinions are cited herein for persuasive value. See 10th Cir. R. 32.1(A).

Petitioner demonstrates that he is entitled to other statutory or equitable tolling, his petition is clearly untimely.

In response to the motion to dismiss, see Dkt. # 9, Petitioner cites 28 U.S.C. § 2244(d)(1)(D) and argues that his one-year limitations period should not begin to run until "early August, 2011," when he purports to have received Cheatham's affidavit. However, the Court has determined above that, under § 2244(d)(1)(D), the "factual predicate" of Petitioner's habeas claims arose during Petitioner's trial when Cheatham allegedly gave false testimony. Therefore, § 2244(d)(1)(D) does not serve to extend the limitations period.

Next, Petitioner incorrectly asserts that, after the state district court denied his application for post-conviction relief, he is entitled to "90 days tolling to appeal." See Dkt. # 9 at 4. Following denial of post-conviction relief by an Oklahoma district court, a petitioner is entitled to tolling of 30 days, the time during which he may perfect a timely post-conviction appeal to the OCCA. Gibson v. Klinger, 232 F.3d 799, 804 (10th Cir. 2000) (holding that for a post-conviction appeal, regardless of whether a petitioner actually appeals, the limitations period is tolled for thirty (30) days, the period in which the petitioner could have sought a post-conviction appeal under state law). The only 90 day time period relevant to the § 2244(d)(1)(A) limitations period is the 90 day time period following conclusion of a state direct appeal when a petitioner may seek certiorari review at the United States Supreme Court. Locke, 237 F.3d at 1273. In this case, Petitioner is not entitled to an additional 90 days of tolling following the state district court's denial of his application for post-conviction relief.

Petitioner also argues that he is entitled to the benefit of the prison "mail box rule" for determining when the one-year period began to run. See Dkt. # 11 (citing Houston v. Lack, 487

U.S. 266, 275-76 (1988) (finding that a "pro se prisoner's [filing] will be considered timely if given to prison official for mailing prior to the filing deadline, regardless of when the court itself receives the documents")). Apparently, Cheatham was in prison when he executed the affidavit. See id. at 1 (stating that "Cheatham and the Petitioner are not in the same prison"). However, the prison "mail box rule" specifically applies to mailings from prisoners to courts. This Court is unaware of any authority applying the prison "mail box rule" to mailings from one prisoner to another. Even if the prison "mail box rule" were applicable under the facts of this case, nowhere in the record is there any evidence demonstrating when Cheatham placed his affidavit in the mail to Petitioner or when Petitioner received the affidavit from Cheatham. Of greater significance, the prison "mail box rule" does not help Petitioner since, as determined above, the "factual predicate" of his claim arose at trial, not when he received the affidavit from Cheatham.

The statute of limitations defined in 28 U.S.C. § 2244(d) is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645, 649 (2010); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). Equitable tolling applies only in "rare and exceptional circumstances." Gibson, 232 F.3d at 808 (citing Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "'show specific facts to support his claim of extraordinary circumstances and due diligence.'" Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Petitioner does not argue that he is entitled to equitable tolling and nothing in the record suggests a basis for equitable tolling. The Court recognizes that, in his petition, Petitioner makes the somewhat cryptic statement that he "makes some claim to actual innocence of the charges." See Dkt. # 2 at 8. As a result, Petitioner may argue that Cheatham's affidavit could overcome the timeliness bar by supporting a claim of actual innocence. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013); Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) ("A claim of actual innocence may toll the AEDPA statute of limitations."). The Tenth Circuit has "stress[ed] that this actual innocence exception is rare and will only be applied in the extraordinary case." Lopez v. Trani, 628 F.3d 1228, 1231 (10th Cir. 2010) (internal quotation marks omitted). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found [the prisoner] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted). Although Petitioner states that he "makes some claim" of actual innocence, his alleged "new evidence," the Cheatham affidavit, serves only as a recantation of Cheatham's trial testimony that Petitioner confessed to him. In and of itself, the affidavit does not support a claim of Petitioner's actual innocence. Furthermore, Petitioner is represented by counsel in this case. Therefore, as stated above, the Court is not obligated to construe his pleadings liberally. Haines, 404 U.S. at 520. Petitioner has failed to meet "the demanding standard for establishing actual innocence." Woodward v. Cline, 693 F.3d 1289, 1294 (10th Cir. 2012). He has not demonstrated entitlement to equitable tolling. The petition for writ of habeas corpus is time barred.

11

**B. Challenges to post-conviction rulings are not cognizable**

Assuming, without finding, that the one-year limitations period began to run under § 2244(d)(1)(D), from the date Cheatham executed his affidavit, then this petition was timely filed.[4] Nonetheless, the Court finds that the claims raised in this petition do not raise cognizable federal constitutional issues. Petitioner challenges only rulings entered by the state district court in his post-conviction proceeding rather than the judgment of conviction. However, there is no federal constitutional right to post-conviction review in the state courts. See Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Therefore, a claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration . . . states no cognizable federal habeas claim." Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998); see also Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); Hopkinson v. Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989) (stating that "a claim that procedural errors occurred during the state post-conviction proceedings would not rise to the level of a federal constitutional claim cognizable in habeas corpus"), overruled on other grounds, Sawyer v. Smith,

---

[4]The Cheatham affidavit was executed July 31, 2011. See Dkt. # 2-1. Applying Fed. R. Civ. P. 6(a)(1)(A), "the day of the event that triggers the period," July 31, 2011, is excluded and the one-year period began to run on August 1, 2011. See Harris v. Dinwiddie, 642 F.3d 902, 907 n.6 (10th Cir. 2011). In the absence of tolling, the one-year period expired August 1, 2012. Petitioner is entitled to 322 days of tolling for the time his post-conviction proceeding was pending. Thus, the limitations deadline was extended 322 days beyond the original deadline of August 1, 2012, or to June 19, 2013. Petitioner filed his petition on June 19, 2013, the last day of the limitations period, if the one-year period commenced when Cheatham executed his affidavit.

497 U.S. 227 (1990). As a result, Petitioner's habeas claims, even if timely, would be dismissed for failure to raise a cognizable federal constitutional claim.

## *CONCLUSION*

Petitioner failed to file his petition for writ of habeas corpus within the one-year limitations period. Respondent's motion to dismiss shall be granted and the petition shall be dismissed with prejudice as barred by the statute of limitations.

## Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's procedural ruling resulting in the dismissal of the petition as time barred is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit

Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Respondent's motion to dismiss petition for writ of habeas corpus as time barred by the statute of limitations (Dkt. # 5) is **granted**.

2. The petition for writ of habeas corpus (Dkt. # 2) is **dismissed with prejudice.**

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this matter.

**DATED** this 31st day of January, 2014.

*Terence Kern*
**TERENCE KERN**
**United States District Judge**